## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Timothy J. O'Meara,

      Petitioner,

v.

Warden Robert Feneis,

      Defendant.

Case No. 07-cv-1428 (DWF/JJG)

**REPORT AND RECOMMENDATION**

---

      This is a 28 U.S.C. § 2254 habeas case.  Petitioner Timothy J. O'Meara ("O'Meara") argues that the Minnesota Court of Appeals improperly concluded that he was not entitled to the benefit of *Blakely v. Washington*, 542 U.S. 296 (2004), on his resentencing.  For the reasons set forth below, the Court recommends that O'Meara's petition be denied and this case dismissed.

## I.   BACKGROUND

### A.   The 2000 Conviction

      On April 4, 2000, the Honorable William E. Walker, Judge of Becker County Minnesota District Court, convicted O'Meara of two counts of second degree criminal sexual conduct under Minn. Stat. § 609.343, subd. 1(a).[1]  O'Meara waived a jury trial and stipulated to the facts upon which Judge Walker tried him.  *O'Meara's Minnesota Court of Appeals Appendix on appeal from post-conviction relief hearing*, A51-54.

      Before O'Meara's sentencing hearing, a presentence investigation and a sexual offender evaluation were completed.  At the sentencing hearing, a clinical and forensic psychologist

---

[1] Minn. Stat. § 609.343, subd 1(a) provides that a person is guilty of second degree criminal sexual conduct if … "the complainant is under 13 years of age and the actor is more than 36 months older than the complainant."

testified that O'Meara was a patterned sex offender under Minnesota law, and gave recommendations regarding the length of his confinement.

Based on findings he made at the conclusion of the sentencing hearing, Judge Walker sentenced O'Meara to two consecutive 40 year terms as a patterned sex offender under Minn. Stat. § 609.108, subd. 2.[2]  Had the trial court sentenced O'Meara under the criminal sexual misconduct statute, Minn. Stat. § 609.343, subd. 2, rather than the patterned sex offender statute, the maximum sentence for each count would have been 25 years.

O'Meara did not timely appeal his judgment of conviction.[3]  However, on June 26, 2000, before the time period in which he could have appealed expired, the Supreme Court issued *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

### B.      The Post-Conviction Petition and Appeals

In April 2002, O'Meara filed a post-conviction relief petition in Becker County District Court.  He argued that *Apprendi* constitutionally barred the trial judge from sentencing him based on factual findings he made at the sentencing hearing.  O'Meara further argued that he was entitled to the presumptive sentences under Minnesota's Sentencing Guidelines, totaling 6 years, rather than the 25 year statutory maximums under Minn. Stat. § 609.343.  *O'Meara's Minnesota Court of Appeals App. in first appeal* at A5-A7.[4]

---

[2] Minn. Stat. § 609.108 is now repealed.  *See State v. Grossman*, 636 N.W.2d 545 (Minn. 2001) (finding Minn. Stat. § 609.108 unconstitutional as applied to Grossman because it violated the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that any fact, other than the fact of a prior conviction, that increases a criminal penalty beyond the prescribed statutory maximum be submitted to a jury and proven beyond a reasonable doubt.)

[3] O'Meara filed his appeal three days after its August 6, 2000, due date.  Consequently, it was dismissed.

[4] O'Meara's habeas petition states that the presumptive sentences under Minnesota's Sentencing Guidelines totaled 111 months (9.25 years).  In his petition for postconviction relief, he argued that that the presumptive sentences totaled 72 months (6 years).

The trial court, Judge Thomas P. Schroeder, a different Becker County Judge than the one who sentenced O'Meara, denied his petition for post-conviction relief. *Id.* at A39. The Minnesota Court of Appeals affirmed the denial of post-conviction relief. *O'Meara v. State*, No. C0-02-1982, 2003 WL 21743557 (Minn. Ct. App. July 29, 2003) (*O'Meara I*).

On May 13, 2004, the Minnesota Supreme Court reversed. *O'Meara v. State*, 679 N.W.2d 334 (Minn. 2004) (*O'Meara II*). The court held that the Minnesota Court of Appeals erred in concluding that O'Meara was not entitled to the benefit of *Apprendi*. The court reasoned that, because the Supreme Court issued *Apprendi* before the expiration of the time period in which O'Meara could have filed a direct appeal from his conviction, he was entitled to its application. *Id.* at 336.

> In light of this holding, the Minnesota Supreme Court ordered:
>
> Reversed and remanded for imposition of the statutory maximum sentences of two consecutive 25-year terms under Minn. Stat. §§ 609.108, subd. 1, and 609.343, subd. 2, plus the conditional release term of ten years mandated by Minn. Stat. § 609.109, subd. 7(a).

*Id.* at 341.

### C.     *Blakely* **and the Resentencing**

On June 24, 2004, barely one month after the Minnesota Supreme Court's May 13, 2004, decision addressing *Apprendi's* applicability to O'Meara's sentence, the Supreme Court issued *Blakely*. In *Blakely*, the Court held that *Apprendi* foreclosed upward durational departures in guideline sentencing situations unless a jury found the facts underlying the departure beyond a reasonable doubt. 542 U.S. at 303.[5]

---

[5] Interestingly, O'Meara waived a jury trial, and was tried on stipulated facts. Respondent does not argue that O'Meara's waiver encompassed facts found at sentencing, nor did the Minnesota Court of Appeals decision under review consider it. The Court, therefore, does not address it.

In August 2004, the judge who originally sentenced O'Meara, Becker County District Court Judge Walker, resentenced him.  As the Minnesota Supreme Court explicitly directed, the trial court sentenced O'Meara to two consecutive 25 year prison terms, plus a conditional release term of 10 years.  *Resentencing Transcript*, p. 22.  The trial court rejected O'Meara's argument that *Blakely* entitled him to receive the shorter presumptive guideline sentences, rather than the 25 year statutory maximums.  *Id.*

O'Meara again appealed, arguing that his sentence was unconstitutional under *Blakely* because the trial judge, not a jury, determined the facts supporting the upward durational departures.  He argued that he was entitled to *Blakely*'s benefit, because his conviction was not yet final when *Blakely* was issued due to the Minnesota's Supreme Court's remand for resentencing.  The Minnesota Court of Appeals disagreed, affirming the trial court.  *State v. O'Meara*, No. A-04-2140, 2005 WL 3527124 (Minn. Ct. App. Dec. 27, 2005) (*O'Meara III*).  It reasoned that *Blakely* was inapplicable to O'Meara, because his judgment of conviction was final in August 2000, after his direct appeal rights were exhausted.  2005 WL 3527124 at *4.  It also held that *Blakely* could not be retroactively applied to O'Meara's final conviction.  *Id.*

On March 14, 2006, the Minnesota Supreme Court denied review of the Minnesota Court of Appeals' decision.

## II.    ANALYSIS

O'Meara argues that he is entitled to habeas relief, because the Minnesota Court of Appeals misapplied clearly established federal law regarding the finality of his conviction, depriving him of *Blakely*.  More specifically, he contends that the state court erred in determining that his conviction was final in August 2000, after his direct appeal rights on his first sentence expired.  Instead, O'Meara argues, his conviction was not final until after his 2004

resentencing, entitling him to *Blakely*, which was issued before the resentencing.  O'Meara also contends in a cursory footnote, that, even if his conviction became final in 2000, the Court of Appeals erred in declining to retroactively apply *Blakely*.   The Court addresses O'Meara's finality and retroactivity arguments below, against the backdrop of the applicable habeas standard.

### A.     Standard of Review

A federal court's review of the state court decisions underlying a state prisoner's petition for writ of habeas corpus is "limited and deferential."  *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (citation omitted).   The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth three circumstances in which it is appropriate for a federal court to grant a state prisoner's habeas petition:  1) the state court adjudication was contrary to clearly established federal law; 2) the state court adjudication involved an unreasonable application of clearly established federal law; or 3) the state court adjudication was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).[6]  O'Meara bases his petition on the second circumstance, the state court's unreasonable application of clearly established federal law.

A state court unreasonably applies clearly established federal law when it correctly identifies the governing Supreme Court precedent, but unreasonably applies it.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  To warrant habeas relief, the state court's misapplication of the federal law must have been "objectively unreasonable."  *Id.* at 410-411 ("[A]n *unreasonable*

---

[6] The Act states, "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

application of federal law is different from an *incorrect* application of federal law.") (emphases in original).

To determine whether Federal law is clearly established for § 2254 purposes, this Court must look to the "the holdings, as opposed to dicta, of … [the Supreme] Court's decisions *as of the time of the relevant state court decision.*"   *Id.* at 412 (emphasis added).   *See also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citing *Williams*, and explaining, "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court *at the time the state court renders its decision*.") (emphasis added).

### B.   <u>Finality</u>

O'Meara challenges the Minnesota Court of Appeals' 2005 decision (*O'Meara III*) regarding the finality of his criminal judgment.   *See Ylst v. Nunnemaker*, 501 U.S. 797, 804-806 (1991) (holding that the relevant state court determination for purposes of AEDPA review is the last reasoned state court decision).   He argues that, contrary to the state court's decision, his sentencing was in flux, and, therefore, his conviction was pending when *Blakely* was issued.

In considering the finality of O'Meara's conviction for the purposes of applying *Blakely*, the Minnesota Court of Appeals followed the Minnesota Supreme Court's 2004 decision in *O'Meara II*.   2005 WL 3527124 at \*3-4.   In *O'Meara II*, the court assessed the finality of O'Meara's conviction to determine the applicability of *Apprendi*.   Relying on *Griffith v. Kentucky*, 479 U.S. 314 (1987), and *Teague v. Lane*, 489 U.S. 288 (1989), the Minnesota Supreme Court identified the following rules as controlling the finality analysis:

> In accordance with *Griffith* and *Teague*, we hold that if a case is pending on direct review when a new rule of federal constitutional criminal procedure is announced, the defendant is entitled to benefit from that new rule.   But if the defendant's conviction is already final at the time the new rule is announced, then the criminal defendant ordinarily may not avail himself of the new rule.

6

*O'Meara II*, 679 N.W.2d at 339-340.

The Minnesota Supreme Court further held that a conviction remains pending on direct review "until such time as the availability of direct review has been exhausted, the time for a petition for certiorari has elapsed or a petition for certiorari with the United States Supreme Court has been filed and finally denied." *Id.* at 337.

Applying these principles, the Minnesota Supreme Court determined that O'Meara's conviction became final on August 6, 2000, the expiration date of his direct appeal. *Id.* at 340. The court, therefore, found the Supreme Court's June 26, 2000, *Apprendi* decision applicable to O'Meara's sentence, because it was issued before the August 6, 2000, expiration of his direct appeal rights. *Id.*

When the Minnesota Court of Appeals revisited the finality of O'Meara's conviction in *O'Meara III*, on his resentencing appeal, it followed the Minnesota Supreme Court's earlier determination that finality occurred on August 6, 2000. 2006 WL 3527124 at *4. The Court of Appeals rejected O'Meara's argument, made solely under state law, that because he was resentenced due to *Apprendi*, his conviction was no longer final for purposes of *Blakely*. *Id.* at *3.

The Minnesota Court of Appeals' determination regarding the finality of O'Meara's conviction was not objectively unreasonable. The parties agree that *Griffith* is the starting point for determining the finality of a conviction when considering the applicability of a new rule of federal constitutional criminal procedure. *Griffith* and other Supreme Court cases pin finality in this context to the expiration of direct review of the criminal judgment of conviction. *Id*. at 326. *See also Allen v. Hardy*, 478 U.S. 255, 258 n.1 (1986) (criminal judgment final for retroactivity purposes where "the judgment of conviction was rendered, the availability of appeal exhausted,

and the time for petition for certiorari had elapsed…."); *Schriro v. Summerlin,* 542 U.S. 348, 352 (2004) ("When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review").

The Minnesota Court of Appeals determined that O'Meara's conviction was final on August 6, 2000, after the expiration of his direct appeal rights on his initial sentence. It did not misapply clearly established federal law. The Supreme Court has not directly addressed whether or how a criminal defendant's resentencing after collateral review impacts the finality of his conviction for retroactivity purposes. Consequently, there was no clearly established Supreme Court precedent for the state court to misapply. *See Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 654 (2006) (where no Supreme Court holdings regarding issue directly under consideration, state court cannot be deemed to have misapplied clearly established federal law). Rather, the state court correctly identified the closest rule (*Griffith*), and applied it reasonably.[7]

O'Meara cites two cases, *Berman v. U.S.*, 302 U.S. 211 (1937), and *Flanagan v. U.S.*, 465 U.S. 259 (1984), to support his argument that his conviction was no longer final after the Minnesota Supreme Court remanded his case for resentencing. Neither case addresses the finality of a criminal judgment in the context at issue here: the applicability of a new rule of federal constitutional criminal procedure. *Berman* addressed the finality of a criminal judgment where the trial court suspended the execution of the defendant's sentence. 302 U.S. at 212-213.

---

[7] While not germane to habeas review, the Court notes that, like the state court here, other courts have concluded that finality attaches upon the expiration of the defendant's direct appeal rights on his first sentence. *Richardson v. Gramley*, 998 F.2d 463, 465 (7th Cir. 1993) (declining to retroactively apply *Batson* on remand for resentencing); *U.S. v. Baron*, 721 F. Supp 259 (D. Haw. 1989) (declining to retroactively apply *Gomez v. U.S.*, 490 U.S. 858 (1989), on remand for resentencing); *People v. Holman*, 547 N.E.2d 124 (Ill. 1989) (declining to retroactively apply *Batson* on remand for resentencing). In *Richardson*, the Seventh Circuit Court of Appeals reasoned, in part, that, "The fact that events occurring in the state court system after his conviction has become final might entitle him to *another* petition for certiorari later on does not detract from the finality of his conviction." 998 F.2d at 467 (emphasis in original).

Berman appealed from that criminal judgment, and later brought a second appeal from his resentencing, while his first appeal was still pending.  The court held that, despite the suspension of the execution of his first sentence, Berman's conviction became final and appealable the first time he was sentenced, "as the first sentence was a final judgment."  302 U.S. at 214.  Because it held that finality attached after the first sentencing, the same conclusion the Minnesota Court of Appeals reached here, *Berman* detracts from O'Meara's position as much as it adds to it.

*Flanagan* does not help O'Meara either.  In addressing whether an order disqualifying counsel was immediately appealable, the Supreme Court simply cited the general rule that appellate review is inappropriate in a criminal case until conviction and imposition of a sentence.  465 U.S. at 263.  It did not address multiple sentences or finality in the context of a new rule of federal constitutional criminal procedure.[8]

O'Meara might have been closer to the mark, but would have missed it nonetheless, had he relied on *Burton v. Stewart*, 549 U.S. 147, 127 S.Ct. 793 (2007).  In *Burton*, the Court considered finality in the context of the statute of limitations for 28 U.S.C. § 2254 habeas petitions.  The Court had before it a factual scenario even more intricate than the facts underlying this case.  Burton was resentenced twice, and the issue there was whether he met 28 U.S.C. §

---

[8] O'Meara's habeas petition emphasizes that the Minnesota Supreme Court vacated his original sentence in 2004, when it ordered his resentencing consistent with *Apprendi*.  His subsequent memorandum of law in support of his petition does not include this argument.  To the extent he still presses it, the Court's review of the Minnesota Supreme Court's decision reflects that it did not explicitly vacate his sentence, but reversed and remanded for reduction of that sentence, specifying the exact sentence that the trial court was to impose upon remand.  O'Meara's attempt to argue that the sentencing slate was wiped clean on remand does not comport with the record.  In any event, O'Meara does not connect this argument to any misapplication of federal law, as he must on habeas review.

2241's successive filing requirements for habeas petitions.[9]   Burton filed two federal habeas petitions, one in 1998, and another in 2002.   The Supreme Court held that the district court should have dismissed the later petition, because Burton did not obtain authorization to file it as § 2241 requires.   127 S.Ct. at 796.   Arguing against this result, Burton contended that he had to file his first petition when he did, in 1998, or he would have missed AEDPA's one year statute of limitations.   The Court disagreed, and, citing *Berman*, held that Burton's AEDPA statute of limitations did not begin running until the expiration of direct review on his resentencing.   *Id.* at 799.

While *Burton* potentially muddies the waters regarding the finality of a conviction when resentencing is involved, it does not result in the conclusion that the Minnesota Court of Appeals committed habeas error here.   First, and most importantly, *Burton* was issued in 2007, well after the Minnesota Court of Appeals decision at issue.   Consequently, it cannot factor into the Court's habeas analysis, which considers whether the state court misapplied federal law as it was *at the time the state court's opinion was rendered*.   *Williams*, 529 U.S. at 412 (emphasis added).

Second, even if the Court could consider it, *Burton* arose in a different context:   the federal habeas statute of limitations.   It did not address finality in the context at issue here, the applicability of a new rule of federal constitutional criminal procedure. As such, it is, at best, only marginally relevant, rather than clearly established federal law regarding the finality of O'Meara's sentence.   *See Carey*, 127 S.Ct. at 654 (2006).[10]

---

[9] Section 2241(3)(A) requires, "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."

[10] The Supreme Court has recognized that, "Finality is variously defined; like many legal terms, its precise meaning depends on context."   *Clay v. U.S.*, 537 U.S. 522, 527 (2003).

The Court recognizes that the procedural history of this case complicates the finality analysis. But no Supreme Court case directly addresses whether resentencing after collateral review renders a previously final conviction pending for the purpose of applying a new rule of federal constitutional criminal procedure. *See Carey*, 127 S.Ct. at 654. The Minnesota Court of Appeals' determination that finality attached after the direct appeal period expired on the first sentence was not an objectively unreasonable application of *Griffith*. Habeas relief on the finality issue is, therefore, unwarranted.

### C.  Retroactivity

Even if his conviction became final in 2000, O'Meara argues that the Minnesota Court of Appeals committed habeas error in declining to retroactively apply *Blakely*. He contends that, because *Blakely* involved the right to trial by jury, the state court should have deemed it a watershed rule subject to retroactive application.

The Court finds no habeas error in the Minnesota Court of Appeals' retroactivity determination. As O'Meara concedes, the Supreme Court has not considered the retroactivity of *Blakely*. The state court's decision in this regard, therefore, cannot be contrary to clearly established federal law on habeas review. *Carey*, 127 S.Ct. at 654.

Nor can O'Meara meet the habeas standard by arguing that the Minnesota Court of Appeals unreasonably applied the general retroactivity rules stated in *Teague*.[11]  In *Teague*, a federal habeas case, the Supreme Court held that new rules of federal constitutional criminal procedure are generally inapplicable to cases on federal collateral review, unless they fall into

---

[11] The Minnesota Court of Appeals' decision was premised on *State v. Houston*, 702 N.W.2d 268, 274 (Minn. 2005). Houston, in turn, relied on the Supreme Court's *Teague* decision. *Id.* at 270.

one of two exceptions.  489 U.S. at 311.[12]  Applying *Teague*, the state court held that *Blakely* did

not establish a watershed rule subject to retroactive application, because "it does not impact the

accuracy of an underlying determination of guilt or innocence."  2005 WL 3527124 at *4 (citing

*Houston*, 702 N.W.2d at 273).

The Court does not find habeas error in the state court's consideration of *Teague*.  It

applied *Teague*, the analytical framework O'Meara concedes applies.  It declined to apply the

watershed exception, based on Supreme Court precedent narrowly limiting it to new rules

impacting the accuracy of the underlying determination of guilt or innocence and the

fundamental fairness of the trial.  *See e.g., Schriro v. Summerlin*, 542 U.S. 348, 352 (2004)

(holding that *Ring v. Arizona*, 536 U.S. 584 (2002), applying *Apprendi* to Arizona dealth penalty

sentencing, was not a watershed new rule).  *See also Sawyer v. Smith*, 497 U.S. 227, 242 (1990)

("A rule that qualifies under this [the watershed] exception must not only improve accuracy, but

also alter our understanding of the bedrock procedural elements essential to the fairness of a

proceeding.") (internal quotations and citations omitted).  Given these cases, it concluded that

*Blakely* impacted O'Meara's sentence, not the accuracy of the determination regarding his guilt

or innocence.  The Court does not find this conclusion an objectively unreasonable application of

clearly established federal law.  *Schriro* expressly discussed, and rejected, the argument that

judicial fact-finding in sentencing diminishes the accuracy of a criminal conviction to the extent

the watershed exception demands.  542 U.S. at 355-356.

---

[12] *Teague* excepts the following from its general rule of non-retroactivity on collateral review:  1) new rules that place "certain kinds of primary, individual conduct beyond the power of the criminal law-making authority to proscribe;" and 2) "watershed" new rules requiring "the observance of those procedures that are implicit in the concept of ordered liberty" or "alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of any particular conviction."  489 U.S. at 311.

The Court acknowledges the Supreme Court's decision in *Danforth v. Minnesota*, 128 S.Ct. 1029 (2008), decided in February of this year.  That case, like this one, involved *Teague's* application in state, versus federal, post-conviction relief proceedings.  There, the defendant argued that he was entitled to the retroactive application of *Crawford v. Washington*, 541 U.S. 36 (2004), generally barring out-of-court testimonial witness statements.  He made this argument in a state petition for post-conviction relief, which was denied.

The Minnesota Supreme Court granted review, in part to consider whether state courts could apply a broader retroactivity standard in state collateral proceedings than that established by *Teague*.  128 S.Ct. at 1034.  The court determined that it could not, holding that it was bound to follow federal law (*Teague*) in determining *Crawford's* retroactivity.  *Id.*

The Supreme Court reversed, holding that *Teague* does not bar states from giving broader retroactive effect to new rules of federal constitutional criminal procedure in their own state collateral proceedings.  *Id.* at 1033.  Accordingly, it remanded the case to the Minnesota Supreme Court for a determination of whether to retroactively apply *Crawford*, in light of the fact that it was not constrained by *Teague*.[13]

*Danforth* is discussed here, because, as in that case, it could be argued that the state court decision at issue was based on the misunderstanding that it was compelled to follow *Teague* in assessing *Blakely's* retroactivity.  The Minnesota Court of Appeals followed *Houston*, which held that *Teague* controlled the analysis.  702 N.W.2d at 271.  While adherence to *Teague* is no longer compelled in state collateral proceedings after *Danforth*, this Court reviews the relevant federal law at the time the Minnesota Court of Appeals issued its 2005 decision.  *Williams*, 529

_____

[13] The Minnesota Supreme Court recently heard oral argument on that issue in *Danforth*.

U.S. 412.  *Danforth* was not yet issued then, and cannot, therefore, provide a basis for habeas error here.  *Id.*

## III.   CONCLUSION

The Court recommends denial of O'Meara's petition for habeas relief.  The Minnesota Court of Appeals did not commit habeas error in concluding that O'Meara's conviction was final in August 2000.  No Supreme Court retroactivity case addresses the resentencing scenario at issue here.  Thus, the state court's conclusion cannot be contrary to clearly established federal law.  The Minnesota Court of Appeals' application of the *Griffith* line of cases, the closest relevant precedent, was not objectively unreasonable.

Nor did it commit habeas error in concluding that *Blakely* should not be retroactively applied to O'Meara's final judgment of conviction, because it followed *Teague*.  While *Danforth* recently held that states are not bound to follow *Teague* in state collateral proceedings, that rule was not before the Minnesota Court of Appeals when it issued its decision, and, therefore, cannot propel habeas relief.  The state court reasonably applied *Teague* to conclude that *Blakely* was not retroactive.

## IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

A.   Timothy J. O'Meara's petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED**;

B.   This action be **DISMISSED WITH PREJUDICE**.

Dated:  September 29, 2008.

s/ *Jeanne J. Graham*

_____
JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **October 14, 2008**.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The District Court shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.